# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ANGEL U.,                 :
                              :
    **Plaintiff,**       :
                                :
    **v.**                  :      **CIVIL ACTION FILE NO.**
                                :      **1:16-cv-03606-AJB**
**COMMISSIONER, SOCIAL**    :
**SECURITY ADMINISTRATION,**[1] :
                              :
    **Defendant.**      :

# <u>O R D E R   A N D   O P I N I O N</u>[2]

Plaintiff Angela U. ("Plaintiff") brought this action pursuant to §§ 205(g) and 1631(c) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social

---

[1]    Carolyn W. Colvin was replaced by Nancy A. Berryhill as the Acting Commissioner of Social Security beginning January 23, 2017. However, Ms. Berryhill's acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.* Pursuant to Fed. R. Civ. P. 17(d), a public officer who sues or is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill no longer is the Acting Commissioner, and no acting Commissioner has been designated, the Clerk is **DIRECTED** to identify Defendant by the official title rather than by name.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* second and third Dkt. Entries dated 6/12/17). Therefore, this Order constitutes a final Order of the Court.

Security Administration ("the Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[3] For the reasons set forth below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.  *PROCEDURAL HISTORY*

On January 23, 2012, Plaintiff filed her application for DIB and SSI alleging a disability onset date of June 1, 2009. [Record (hereinafter "R") R185]. These claims were denied initially on July 17, 2012 and upon reconsideration on November 8, 2012. [R86-90]. Thereafter, Plaintiff filed a written request for a hearing. [R96]. Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on

---

[3] Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, provides for SSI for the disabled, whereas Title II of the Social Security Act provides for federal DIB, 42 U.S.C. § 401, *et seq.*  The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).  Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI.  However, different statutes and regulations apply to each type of claim.  Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations herein should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

October 24, 2014, where she was represented by counsel, and a vocational expert ("VE") testified. [R41-78].

Plaintiff subsequently amended her alleged onset date to June 11, 2013. [R276]. On February 23, 2015, the ALJ denied Plaintiff disability benefits. [R23-33]. Plaintiff then filed an appeal with the Appeals Council ("AC"),[4] which appeal was denied on July 28, 2016, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff filed this action on September 26, 2016, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on June 9, 2017. [Docs. 12-13]. On July 11, 2017, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 16], and on August 7, 2017, the Commissioner filed a response in support of the decision, [Doc. 17], to which Plaintiff replied on August 21, 2017, [Doc. 18]. The matter is now before the Court upon the administrative record, and the parties' pleadings and briefs,[5] and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

_____

[4] With her appeal, Plaintiff submitted 152 pages of additional mental health records from Avita from 2009 through 2015. [R456-532].

[5] Neither party requested oral argument. (*See* Dkt.).

AO 72A
(Rev.8/8
2)

## II.   PLAINTIFF'S CONTENTIONS

Plaintiff's brief claims that the ALJ made the following errors:

1.    The ALJ failed to fully and fairly develop the record;

2.    The AC improperly denied Plaintiff review; and

3.    The ALJ's finding is not supported by substantial evidence.

[Doc. 16 at 9-15].

## III.   STATEMENT OF FACTS

### A.   Background

Plaintiff was born in November 1972 and was 36 years old on the alleged onset date.  [R185].  Plaintiff completed high school.  [R198].  Plaintiff previously worked as a dental hygienist and consultant, but stopped working on June 1, 2009.  [R197-98]. She alleged disability due to back and neck pain and mental illness.  [R197].

### B.   Lay Testimony

Plaintiff testified that she got an associates degree in the medical field and became a registered dental hygienist in 1987.  [R49].  She testified that she worked as a dental hygienist from 1995 until 2009.  [*Id.*].  She also testified that from 2000 to 2003, she worked as a dental consultant which was "more of a sales based position for product that had to go into the offices and consulting based on their need to set up a

4

structured program from what they needed for their . . . hygienist program for treating patients." [R50].

Plaintiff testified that she stopped working in 2009 because she had previously been working part-time but, after she began to work full-time due to an employee departure, she "started having situations" where she lost her temper, was late to work due to "getting up and the medications," and having neck and back problems trying to do her job. [R53]. Plaintiff stated that, after an incident in which she lost her temper, the owner of the practice where she worked told her that they understood she had a mental illness, but that she "just can't do this." [*Id.*].

Plaintiff testified that her anxiety and depression would get triggered at work when she was not well rested, was late because of lack of rest and being medicated, heard children screaming in the waiting room, skipped lunch and hydration, or handled a large patient volume with few breaks due to the commission-based compensation structure. [R54-55].

Plaintiff explained that after the hygienist job, she took a phone-based job for 30- to 32-hours a week for five weeks. [R56]. She stated that the difficulty she experienced in that position was the pressure to make many calls. [*Id.*]. Plaintiff also testified that she worked in a retail position at a car dealership, but the owner was

AO 72A
(Rev.8/8
2)

concerned about her hands visibly shaking, and after she failed to make any sales working three and half days a week over five weeks, she was let go. [R57]. Plaintiff believed that she was unsuccessful in that position because she felt under pressure and had anxiety from remembering numbers and negotiating with customers. Plaintiff opined her condition has worsened since then. [R57-58]. Specifically, her anxiety and racing thoughts affected her sleep and she is depressed. [R58]. She testified that these conditions were exacerbated by financial stressors, a brief period of homelessness, and her father's hospitalization. [R58-59].

Plaintiff testified that, on an average day, she wakes up around 9:30 or 10:30 a.m., groggy from taking Trazodone[6] to help her sleep. [R60-61]. She then eats; takes her medications; lists things to sell on eBay (to make money); does housework like light cleaning, vacuuming, mopping, and sweeping for short periods of time; tries to plan groceries and get meals ready; goes outside to spend time with animals in good weather; reads for short periods of time; watches television; goes online; and talks to her father and best friend on the phone about her anxiety. [R61-63]. She further testified that she can independently bathe, dress, and take care of her personal hygiene

---

[6]       Trazodone is a serotonin modulator typically used to treat depression. MedlinePlus, Trazodone, https://medlineplus.gov/druginfo/meds/a681038.html (last visited 9/4/18).

AO 72A
(Rev.8/8
2)

but, once a week, will go through a two-or three-day period where she does not, and this has gotten worse over the last year. [R62-63]. Plaintiff testified that she gets out of the house on a regular basis—running errands or seeing family twice a month—but is at home for a couple days at a time. [R63-64]. She testified that she no longer swims when she spends time with her family at the lake, due to her back and legs, and her mental health causes difficulties being with her mother, who also has untreated mental health issues. [R64-65]. Plaintiff confirmed that she can drive and has a valid driver's license without restrictions. [R75].

Upon being questioned about whether she could do a job that involved sitting, simple, routine tasks, no high paced production aspects, and few interactions with others for forty hours a week, Plaintiff responded that she would have trouble getting up in the morning to get there on time, stay focused, and not become manic. [R66]. Plaintiff testified that, in addition to grogginess, her medications cause her to shake (making it difficult to do things that require precision in her hands), upset her stomach, and cause nausea, dehydration, and headaches (due to Lexapro).[7] [R67]

---

[7] Lexapro (escitalopram) is used to treat depression and generalized anxiety disorder. It is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs) and works by increasing the amount of serotonin in the brain. MedlinePlus, Escitalopram, https://medlineplus.gov/druginfo/meds/a603005.html (last visited 9/4/18).

AO 72A (Rev.8/8 2)

Plaintiff's attorney introduced additional medical records at her hearing that are in the record as an unsigned, undated medical source opinion questionnaire, [R43, 442]. At the hearing, the ALJ noted the record was incomplete and, apparently Plaintiff's attorney supplied her with the full record, as the ALJ referred to a brief medical narrative from Tamika Perkins, a counselor that Plaintiff testified she saw once or twice a month for about two years at Avita, where she was treated for a total of six years. [R44-45]; *see also infra* n.12. Plaintiff's attorney also submitted a medical source opinion from Amanda Dutton. [R45]. He explained that Plaintiff would amend her onset date and the ALJ stated that she would not make a decision until she heard from the attorney regarding an amended onset date and reviewed "whatever post-hearing submissions he provides." [R46].

## C. Medical Records

### 1. Consultative Examinations

Consultative examiner Scott Duncan, Psy. D., evaluated Plaintiff on October 19, 2012. [R405]. His examination involved a clinical and historical interview with Plaintiff, a mental status examination, and a review of eight pages of Disability Adjudication Services ("DAS") records. [*Id.*]. Plaintiff reported that "she left her last job because they cut her hours and paid only commission per clients." [R406]. She

8

reported seeing a psychiatrist and therapist consistently for the last seven years at Avita and her only psychiatric hospitalization was in 2002 for "severe clinical depression and suicide." [*Id.*]. She reported that in 2003 she was diagnosed with bipolar disorder type II and is currently on Lithium,[8] Wellbutrin,[9] and Trazodone (at night), which she stated "overall work pretty well." [*Id.*]. Plaintiff stated that "she reads a lot, does some minimal exercising, goes to the park, walks the dog, sells her belongings on eBay, and does phone consultations as they come in . . . [and] drives herself to her chiropractic and mental health appointments. She does not need assistance from others to meet her daily needs due to her mental health limitations." [*Id.*].

On mental status examination, Dr. Duncan noted that Plaintiff had good eye contact, no unusual psychomotor movements, euthymic mood that was sad at times, adequate insight and judgment, unimpaired immediate and short-term memory, coherent and fluent speech, denied hallucinations or delusions, showed no signs of psychosis, and was cooperative and oriented to self, time and place. [R406-07].

---

[8]     Lithobid (lithium carbonate) is used to treat manic-depressive (bipolar) disorder. https://www.webmd.com/drugs/2/drug-6874/lithobid-oral/details (last visited 9/4/18).

[9]     Bupropion, also known by the brand name Wellbutrin, is an antidepressant that works by increasing certain types of activity in the brain. MedlinePlus, Bupropion, https://medlineplus.gov/druginfo/meds/a695033.html (last visited 9/4/18).

AO 72A
(Rev.8/8
2)

Dr. Duncan diagnosed Plaintiff with bipolar disorder I, most recent episode, mild, and ascribed a GAF score[10] of 70.[11]  [R407].  He further elaborated that she had "no significant difficulty effectively maintaining attention and sustained concentration . . . understanding simple directives effectively or . . . recalling them . . ., meeting expected job requirements consistently . . . carrying out directives . . . relating to people . . .  Being able to understand basic directives effectively or carrying them out consistently."  [*Id.*].  He did not specify any work-related limitations.  [R406-08].

On November 4, 2012, State Agency reviewing psychologist Vicki Prosser, Ph. D., evaluated the case at the reconsideration level.  [R415].  She also found that Plaintiff had bipolar disorder I with the most recent episode depressed and mild. [R418].  In the functional limitations chart, she checked boxes indicating moderate limitations for restriction of activities of daily living; difficulties in maintaining social

---

[10]     The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) that considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness.  *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Revision, 2000) ("DSM-IV-TR").

[11]     A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR 34.

AO 72A
(Rev.8/8
2)

functioning; and difficulties in maintaining concentration. [R425]. She indicated that there were no episodes of decompensation. [*Id.*]. Dr. Prosser opined that although Plaintiff's hair was unruly and her affect sad, her mood was euthymic and she had good memory, adequate judgment, concentration, attention, and insight. [R427]. She concluded that Plaintiff "appears to have mild to moderate symptoms of a mood disorder . . . moderate limitations in daily living skills . . . social skills, and . . . attention/concentration/pace." [*Id.*].

In the form for mental residual functional capacity assessment, Dr. Prosser noted that Plaintiff was "moderately limited" in the following abilities: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting

11

behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and be aware of normal hazards and take appropriate precautions. [R429-30]. Dr. Prosser found that Plaintiff had no significant limitations in the following abilities: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. [*Id.*].

In the functional capacity assessment section, Dr. Prosser wrote: "The claimant appears capable of understanding and carrying out instructions and can maintain attention and concentration adequately for 2 hour periods in a 8-hour workday. The claimant can complete a normal work week without excessive interruptions from psychological symptoms, can relate appropriately to coworkers and supervisors in a limited basis and can adapt to a job setting." [R431].

AO 72A
(Rev.8/8
2)

Psychiatrist Karim Goral, M.D., completed a mental medical source statement on April 19, 2013. [R445].[12] The form indicated that Plaintiff was mildly limited in all the listed areas except she was moderately limited in the following abilities: complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation, [R446-47]. He also checked "yes" to questions about whether Plaintiff has a substantial loss of the ability to make simple work-related decisions, respond appropriately to supervision, coworkers and usual work situations and deal with the changes in a routine work setting. [R447-48].

On October 22, 2014, Plaintiff's mental health counselor, Amanda Dutton, LAPC, ("Dutton") filled out a medical source statement indicating the Plaintiff was markedly limited in the following abilities: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended period; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in

_____

[12]     However, this form was signed by Tamika Perkins ("Perkins"). [R448].

AO 72A
(Rev.8/8
2)

coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. [R451-52]. Dutton indicated that Plaintiff was moderately limited in the following abilities: interact appropriately with the general public; carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. [*Id.*]. Dutton indicated Plaintiff was mildly limited in the abilities to understand and remember very short and simple instructions and be aware of normal hazards and take appropriate precautions. Dutton also indicated that Plaintiff had a substantial loss in the following abilities: understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work related decisions; respond appropriately to supervision, co-workers and usual

14

work situations; deal with changes in a routine work setting. [R452-53]. Dutton also stated that the limitations she assessed began on October 26, 2008. [R453].

Dutton attached a letter to the form stating that, at Avita, "medical practitioners involved in care provide only medication and consultation and have minimal involvement in the extensive care of our clients." [R454]. She stated that she was most familiar with Plaintiff, who

> has not achieved stability in her symptoms since coming to our practice on 2008, despite multiple medication and dosage changes. I am able to visualize marked shaking in her hands as she experiences manic episodes when she is in my office as well as significant periods of depression. [She] experiences rapid cycling bipolar I disorder, marked by four or more changes in mood per year, from manic to depressive symptoms and back often, [Plaintiff] experiences a mixture of these symptoms, causing her to have issues with sleep, memory, and other activities of daily living.
>
> It is my professional opinion that these factors cause her marked limitation in the ability to hold gainful employment in any field; . . . I have worked with her in a one-on-one environment and have seen the distraction that she encounters even when in this setting [and have] witnessed her marked limitations in memory as they relate to simple tasks and directions.

[*Id.*].

## 2. Treatment Records

Neither party included any summary of facts indicating which medical records were relevant to the claims before this Court. Instead of attempting to reconstruct

15

hundred of pages of Plaintiff's medical records—many of which preceded her amended alleged onset date—the Court will confine its summary to those records explicitly cited by the parties in their briefs.

Here, Plaintiff took issue with the ALJ's omission of certain treatment records authored by Perkins, [*see* Doc. 16 at 9, n.6], and furnished to the ALJ after the hearing, in an October 31, 2014 letter by Plaintiff's attorney. [R276-82]. This letter amended the alleged onset date and stated that it

> was medically significant because her treatment records from Avita demonstrate a clear decline in her mental wellbeing on that date. Enclosed for your consideration are three consecutive treatment records excerpted from her recently submitted records from, that facility. The dates of treatment are May 21, 2013, June 11, 2013, and July 1, 2013. The consecutive sections labeled **Client Response to Intervention** illustrate a clear worsening of [Plaintiff]'s functioning between her May and June sessions . . . .

[R276 (emphasis in original)]. The attached records were authored by Perkins and the sections referenced by Plaintiff's attorney pertain to Plaintiff's subjective, self-reported symptoms. [R280, 282]. For example, on May 21, 2013, the Client Response to Intervention section states Plaintiff "was able to vent frustrations and agreed that she has to do more individual processing in the moment, was able to practice healthy ways

AO 72A
(Rev.8/8
2)

to communicate concerns with neighbors and understand the need for consistent boundaries." [R278]. The June 11, 2013 record reflects that Plaintiff

> reports that she has been depressed[] for the past wk, not wanting to get up[] out of bed nor engage in any activities, discussed how she believes that hromonally [*sic*] she is imbalanced as well, id'ed frustrations with not being able to see an end of the struggle that she has been in for the past 2 yrs and id'ed that she feels and fears that she has become more cold and guarded. When communicating about past marriage, Cn became tearful but m[ade] connections to why she has not allowed others to get close to her, id'ed that she will start investing more time into personal life and explore what she really wants and if they are good goals or realistic. Also admitted that she needs to connect to another support group in her community again due to benefits she experienced before.

[R280]. On July 1, 2013, Perkins wrote:

> id'ed that she had been depressed due to current demands on her, id'ed that she had spent several days in bed and not motivated to g[e]t up. Admitted that she had not been working through sxs very well and id'ed that she had plans on engaging in more activities with friends and family, id'ed allowing her depression to take over due to annoyance of negativity that she experiences. Reports that she will start tracking moods on calendar to assist with id'ing triggers.

[R282]. Notably, these records contain no mental status examinations or other objective tests, diagnoses, or opinions from Perkins about Plaintiff's specific limitations. [*Id.*].

Plaintiff also takes issue with the AC's refusal to remand the case in light of the additional mental health treatment records from Avita that she first submitted to the AC

17

on appeal of the ALJ's decision. [Doc. 16 at 10 (citing [R456-605]), 13-14]. However she does not cite to a single one of these records to explain how, if at all, they warranted remand from the AC. [*Id.*, *passim*].

### D. Vocational-Expert Testimony

The VE testified that Plaintiff's past work as a dental hygienist and pharmaceutical sales representative was skilled and light duty. [R70]. The VE explained that Plaintiff's knowledge of healthcare, medical, technological services, people skills, merchandising, retail, selling, ability to make judgments, and work with strict tolerances, was transferable. [*Id.*].

Using Plaintiff's RFC as determined by Dr. Prosser, [R429-31], the ALJ asked the VE if Plaintiff could do her past relevant work if she was

> capable of understanding and carrying out instructions and can maintain attention and concentration adequately for two hour periods in an eight-hour workday; can complete a normal workweek without excessive interruptions from psychological symptoms; can relate appropriately to coworkers and supervisors on a limited basis; and can adapt to a job setting.

[R70-71]. The VE responded that, under this hypothetical, Plaintiff could perform both of her past jobs. [R71].

18

Then, using Dr. Duncan's psychological consultative examination as a guide, [R405-08], the ALJ asked the VE if Plaintiff could do her past relevant work if she had

> no significant difficulty with effectively maintaining attention and sustained concentration. . . . [S]he would have no significant trouble understanding simple directives effectively or have trouble recalling them. . . . [N]o significant difficulty meeting expected job requirements consistently due to her current level of emotional functioning. . . . [N]o significant difficulty carrying out directives given her current level of emotional functioning. . . . [No] significant difficulty relating to people based on mental illness. . . . [No] significant difficulty being able to understand basic directives effectively or carrying them out consistently.

[R71-72]. The VE testified that given these limitations, Plaintiff could not perform a pharmaceutical sales job "to be safe, . . . because you're talking about simple directions and stuff. And that's an advanced sales skill." [R72]. However, the VE testified that Plaintiff could still be a dental hygienist "because a lot of those tasks are repetitive in nature and so there's very little job changes and so once the job is learned, it's pretty rare that there's going to be more complicated information given." [*Id.*].

The ALJ used Perkins' one-page assessment, [R442], as a guide, and asked the VE if Plaintiff could do her past relevant work if she had

> a mildly limited ability to . . . remember locations and work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out short and simple instructions. . . . [M]aintain attention and concentration for extended periods (the approximately two-hour segments between arrival and first

19

break, lunch, second break, and departure), perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain[] an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, make simple work related decisions, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. . . [and] moderate limitations[13] . . . [in completing] a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting and travel to unfamiliar places or use public transportation.

[R73]. The VE responded that there "was a little conflict between the mild and moderate" but "if we take all of that as a whole, then past relevant work would be eliminated as well as competitive employment due to unable to complete a workweek." [R74-75].

Lastly, the ALJ, using Dutton's October 2014 letter as a guide, asked the VE if Plaintiff could perform past work with

---

[13]     The ALJ clarified that "[m]oderately limited is an impairment which seriously interferes with and in combination with one or more other restrictions assessed may preclude the individual's ability to perform the designated activity on a regular and sustained basis." [R72].

20

AO 72A (Rev.8/82)

marked[14] limitations . . . [in the] . . . ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, be punctual, and maintain regular attendance within customary tolerances, sustain a work -- an ordinary routine without special supervision, work in coordination with others without being unduly distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism.

[R76-77]. The VE responded that these limitations would preclude past relevant work.

[R77].

## IV.    ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since June 1, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

3.    The claimant has the following severe impairments: bipolar disorder I and histrionic personality disorder (20 CFR 404.1520(c) and 20 CFR 416.920(c)).

. . .

---

[14]    The ALJ clarified that "marked for purposes of this hypothetical means that it would preclude the person's ability to function independently, appropriately and effectively in the designated area on a regular and sustained basis eight hour a day, five days a week or on an equivalent schedule." [R77].

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

. . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant appears capable of understanding and carrying out instructions and can maintain attention and concentration adequately for 2 hour period in an 8-hour workday. The claimant can complete a normal workweek without excessive interruption from psychological symptoms, can relate appropriately to coworkers and supervisors on a limited basis and can adapt in a job setting.

. . .

6.  The claimant is capable of performing past relevant work as a dental hygienist and pharmaceutical sales representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 20 CFR 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from June 11, 2013, through the date of this decision (20 CFR 404.1520(f) and 20 CFR 416.920(f)).

[R25-33].

22

AO 72A
(Rev.8/8
2)

In concluding that Plaintiff's impairments did not equal a listing, the ALJ found that Plaintiff had moderate difficulties in social functioning, concentration, persistence, pace, and activities of daily living, but no periods of decompensation. [R27]. The ALJ relied upon the opinion of Dr. Prosser, whose report showed that Plaintiff could drive; take care of herself; cook simple meals; perform light chores with encouragement; needed reminders for medications; did not keep track of her finances when manic; made friends easily, but did not keep them for long due to her impatience, arguments, and mood swings; had poor concentration; had difficulty following instructions; lacks focus; and uses poor judgment. [*Id.*]

The ALJ accorded significant weight to "the medical assessments and opinions of Dr. Duncan–who found Plaintiff had 'no significant difficulty effectively maintaining attention and sustained concentration . . . understanding simple directives effectively or . . . recalling them . . . meeting expected job requirements consistently . . . carrying out directives'–because it is in alignment with the amended alleged onset date of disability and the Disability Determination Services (DDS) opinions." [R30]. The ALJ also accorded significant wright to Dr. Prosser because "she provided specific reasons for her opinions about the claimant's impairments showing that the opinions were grounded in the evidence in the case record" and

23

AO 72A
(Rev.8/8
2)

"appear to be supported by the medical evidence of record from the alleged onset date forward." [R32].

The ALJ accorded lesser weight to Dutton's medical source statement concerning the severity of Plaintiff's mental impairment—that opined Plaintiff "was markedly limited in her ability to remember work-like procedures; understand, remember, and carryout detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods . . . demonstrated a markedly limited ability to get along with coworkers, peers or supervisors . . . demonstrated a markedly limited ability to hold gainful employment in any field"—"because the remainder of the objective medical evidence of record does not support it for the period before the undersigned." [R30-31].

The ALJ accorded no weight to Dr. Goral's opinions concerning the severity of Plaintiff's mental impairment—who opined that Plaintiff "demonstrates mild limitations in her ability to understand, remember and carryout short and detailed instructions; maintain attention and concentration for extended periods; interact with

24

the general public and get along with coworkers and peers . . . demonstrates moderate limitations in her ability to respond appropriately to changed in the work setting, travel in unfamiliar places or to use public transportation"—"because they are internally inconsistent." [R31]. For example, the ALJ noted that Dr. Goral indicated mild to moderate level of mental health difficulty, but concluded that Plaintiff had substantial mental health limitations in her ability to work, and cited that his first contact with Plaintiff was in 2007. [*Id.*].

The ALJ also found that Plaintiff's "testimony is not entirely consistent with a finding of disability symptoms" because her daily activities were not limited to the extent one would expect given her complaints of disabling symptoms and limitations. [R32]. For example, the ALJ noted that Plaintiff reported to the consultative psychologist that she reads a lot, does minimal exercise, goes to the park, walks her dog, sells things on eBay, does phone consultations as they come in, and reported that she was working part-time until her hours and pay were cut (rather than that her mental disability interfered with her work). [R32].

The ALJ also noted that there was "no additional treatment . . . after the alleged onset date . . . [and that] evidence received in the record after the reconsideration determination did not provide any new or material information that would alter any

findings about the severity of the claimant's alleged impairments." [R32]. The ALJ also found that although Plaintiff has "some mental impairments . . . this does not preclude routine, unskilled work activity and performance of repetitive tasks." [*Id.*].

## V.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.

26

AO 72A
(Rev.8/8
2)

*See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform

AO 72A
(Rev.8/8
2)

other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). The Commissioner must produce evidence that there is other work

available in the national economy that the claimant has the capacity to perform.

*Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an

inability to perform the jobs that the Commissioner lists. *Id.*

   If at any step in the sequence a claimant can be found disabled or not disabled,

the sequential evaluation ceases and further inquiry ends.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at

step five, the overall burden rests on the claimant to prove that he is unable to engage

in any substantial gainful activity that exists in the national economy. *Doughty*,

245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983),

*superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in*

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## VI.   SCOPE OF JUDICIAL REVIEW

   A limited scope of judicial review applies to a denial of Social Security benefits

by the Commissioner.  Judicial review of the administrative decision addresses three

questions:  (1) whether the proper legal standards were applied; (2) whether there was

substantial evidence to support the findings of fact; and (3) whether the findings of fact

AO 72A
(Rev.8/8
2)

resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as

29

unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

Also, a "court must consider evidence not submitted to the [ALJ] but considered by the Appeals Council when that court reviews the Commissioner's final decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007). In reviewing this additional evidence, the court must evaluate whether this "new evidence renders the denial of benefits erroneous." *Id.* at 1262. This means that the court must "determine whether the Appeals Council correctly decided that the '[ALJ's] action, findings, or conclusion is [not] contrary to the weight of the evidence currently of record.' " *Id.* at 1266-67 (quoting 20 CFR 404.970(b)).

AO 72A
(Rev.8/8
2)

## VII. CLAIMS OF ERROR

### A. Whether the ALJ developed a full and fair record

#### 1. Nurse Perkins' Treatment Notes and Assessment

First, Plaintiff claims that the ALJ erred "by not ascertaining the identity of 'Tamika' –nor of her specific relationship to Plaintiff. As the record disclosed, she was Tamika Perkins, LAPC, one of Plaintiff's treating mental health counselors at Avita." [Doc. 16 at 9]. These records were submitted to the ALJ after the hearing and Plaintiff contends "it is clear that the ALJ did not connect these records with the assessment form . . . as the decision noted no treatment after June 13, 2013, yet these records had a report from July 1, 2013." [*Id.* at 9, n.6].

The medical source opinion questionnaire, allegedly authored by Dr. Goral, but signed by Perkins, [R445-48], was introduced for the first time at the hearing, [R442]. Perkins' treatment notes were submitted on October 31, 2014 in a letter by Plaintiff's attorney, who stated that the records "demonstrate a clear decline in her mental wellbeing . . . The dates of treatment are May 21, 2013, June 11, 2013, and July 1, 2013. The consecutive sections labeled Client Response to Intervention illustrate a clear worsening of [Plaintiff's] functioning between her May and June sessions. . . ." [R276]. During the hearing, upon questioning by the ALJ, Plaintiff could not recall

31

Tamika's last name and identified her as her counselor, who she saw once or twice a month for about two years at Avita, where she was treated for a total of six years. [R44-45]. The ALJ noted that the questionnaire was "internally inconsistent." [R74]. Nevertheless, the ALJ used the questionnaire—which she referred to as "the one from Tamika"—as the basis for a hypothetical posed to the VE. [R72]. Later, the ALJ's decision referenced the questionnaire as Dr. Goral's opinion, and, again, noted that she would give it no weight due to its internal inconsistencies. [R32]. The ALJ did not reference Perkins' treatment records in the decision and stated that there were no records of Plaintiff's treatment after her alleged onset date. [*Id.*]. Therefore, the ALJ erred by stating that there were no records of treatment after the alleged onset date.

The question for the Court, then, is whether this error is harmless. *See Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) (applying harmless error analysis in Social Security cases); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis where the ALJ made an incorrect statement of fact). Generally, an error is harmless in a Social Security case if it "do[es] not affect the ALJ's determination that a claimant is not entitled to benefits." *Young v. Astrue*, No. 8:09-cv-1056, 2010 WL 4340815, *4 (M.D. Fla. Sept. 29, 2010).

32

AO 72A
(Rev.8/8
2)

The ALJ clearly considered and weighed the medical questionnaire and ultimately rejected it as internally inconsistent. [R32]. Plaintiff makes no argument—and the Court cannot discern any—whereby Perkins' treatment notes dispel this internal inconsistency or alter the overall balance of the medical evidence supporting Plaintiff's disability claims. Indeed, Perkins' treatment notes are merely another instance of Plaintiff's medical providers documenting her subjective symptoms and do not include any objective assessments, testing, or diagnoses. [R277-82]. Even if they did constitute an opinion from a medical provider, Plaintiff admits that Perkins is not an acceptable medical source and her opinion would warrant no special weight. [*See* Doc. 16 at 10]. *See* 20 C.F.R. § 404.1502(a)(1)-(6) (listing acceptable medical sources). Moreover, the ALJ's failure to explicitly discuss Perkins' treatment notes is not reversible error as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.' " *Dyer*, 395 F.3d at 1211 (quoting *Foote*, 67 F.3d at 1561) (emphasis in *Dyer*). Consequently, although the ALJ inaccurately found that Plaintiff had no treatment after

33

her amended alleged onset date and omitted any mention of Perkins' treatment notes, this was a harmless error.

## 2. Nurse Dutton's Notes and Assessment

Plaintiff next contends that because there were no records from Dutton in the file (which were later submitted to the AC), the ALJ "was under the mistaken impression that Plaintiff was not under any mental health treatment after her (amended) onset date" and gave significant weight to Dr. Prosser. [Doc. 16 at 10]. Plaintiff submits that, if these records had been considered by the ALJ, they should have been given greater weight because they are treating sources. [*Id.*]. Plaintiff further submits that, because the VE testified that the opinions of Dutton and Perkins would lead to a conclusion that Plaintiff could not work, consideration of them is crucial. [*Id.*]. Plaintiff also argues that, because the later-submitted records from Avita span six years, they provide a longitudinal perspective to evaluate mental impairments, as per the Commissioner's regulations. [Doc. 16 at 11 (citing 20 C.F.R. § 404, Subpart P, App. 1 § 12.00(D)(2))]. Plaintiff argues that, by not having her years of mental health treatment records before her, the ALJ was unable to give proper weight to Plaintiff's treating providers and that it was the ALJ's responsibility to "make every reasonable effort to develop" a complete

AO 72A
(Rev.8/8
2)

medical history. [*Id.* at 12 (citing *Rease v. Banhart*, 422 F. Supp. 2d. 1334 (N.D. Ga. 2006))].

The Commissioner responds that, as Plaintiff was represented, the ALJ had no special duty to develop the record and, assuming that she had, Plaintiff must show prejudice in order to establish that her due process rights were violated to a degree that requires remand. [Doc. 17 at 5 (citing *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997); *Sims v. Apfel*, 530 U.S. 103, 111 (2000); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *Ellison v. Banhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987))]. Moreover, the Commissioner adds, Plaintiff never requested that the ALJ obtain additional medical records, was given additional time to obtain records, and cannot show prejudice because the AC had the additional records but nonetheless denied Plaintiff's request for review on the grounds that substantial evidence supported the ALJ's decision. [*Id.* at 5-6]. Plaintiff replies that she fulfilled her duty to inform the ALJ of her records, but it was the ALJ's duty to obtain them. [Doc. 18 at 2].

Ultimately, the burden is upon Plaintiff to show she is disabled. 20 C.F.R. § 404.1512(a)(1); *Doughty*, 245 F.3d at 1278 n.2; *Boyd*, 704 F.2d at 1209.

35

The ALJ's only burden with respect to obtaining or seeking Plaintiff's existing medical records is to:

> make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination.

20 C.F.R. §§ 404.1512(b)(1)(i); 416.912(b)(1)(i). Plaintiff does not allege that the ALJ failed to do comply with these regulatory requirements. [Doc. 16 *passim*]. Unlike the plaintiff in *Rease*, who was proceeding pro se and specifically requested that the ALJ subpoena medical records from his doctors, Plaintiff does not allege that the ALJ failed to obtain records she specifically requested. *Compare* [Doc. 16] *and Rease*, 422 F. Supp. 2d at 1373. As such, there was no error in the ALJ's failure to proactively seek and obtain additional medical records, including Dutton's records.

Accordingly, the Court concludes that Plaintiff has not shown reversible error on this enumeration.

## B.    Whether the AC properly denied review

Plaintiff argues that because "it was an obvious abuse of discretion by the ALJ not to have obtained [the additional mental health records submitted to the AC]; and thus, her decision was based upon an error of law and lacking in substantial evidence.

36

Review should have been granted and the case remanded to the ALJ for consideration of the entire record." [Doc. 16 at 13-14 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Flowers v. Comm'r Soc. Sec.*, 441 Fed. Appx. 735, 745 (11th Cir. Sept. 30, 2011))].

The Commissioner responds that the AC may only consider evidence that is new, material, relates to the period on or before the date of the ALJ hearing, and if the ALJ's decision is "contrary to the weight of the evidence currently of record." [Doc. 17 at 7 (quoting *Ingram*, 496 F.3d at 1261)). Here, the Commissioner submits, the AC "articulated a legally sufficient reason for denying review" and it need not "provide a detailed written explanation concerning newly submitted evidence in its notice denying review." [*Id.* at 7-8 (citing *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 785 (11th Cir. 2014); *Ingram*, 496 F.3d at 1262; *Parks ex rel. D.P. v. Comm'r Soc. Sec.*, 783 F.3d 847, 852 (11th Cir. 2015))].

The law is well settled in this circuit that a legal claim or argument that has not been briefed is deemed abandoned and that mentioning an issue without providing specific argument in support is not sufficient. *Dawkins v. Glover*, 308 Fed. Appx. 394, 395 (11th Cir. Jan. 23, 2009); *Seay v. United States*, 166 Fed. Appx. 422, 423 (11th Cir. Jan. 26, 2006) (holding that appellant's mere statement that district court

37

AO 72A
(Rev.8/8
2)

improperly dismissed his complaint on *res judicata* grounds without any substantive argument in support amounted to abandonment of his claims even though he argued the merits of his underlying claims).  Thus, issues only raised in passing and not clearly raised are deemed abandoned.  *Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 913 (11th Cir. May 29, 2015) ("Abandonment can occur when an appellant only makes passing reference to a claim.") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014) (explaining that appellant abandoned a claim when he did not address holdings of district court other than to make passing references to the holdings without advancing any arguments or citing any authorities to establish they were in error)).

Plaintiff's bald assertion, without more, that the AC should have reviewed and remanded the case due to the ALJ's "obvious abuse of discretion . . . not to have obtained" the additional mental health records submitted to the AC and assertion that "her decision was based upon an error of law and lacking in substantial evidence" constitutes abandonment or waiver of this issue, [Doc. 16 at 13-14], and is insufficient to present an issue before this Court for review.

Moreover, even if the Court interprets Plaintiff's argument to contend that the AC erred in denying review without showing "in its written denial that it has

AO 72A
(Rev.8/8
2)

adequately evaluated the new evidence," [*id.* at 14-15 (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5ᵗʰ Cir. 1980))], Plaintiff has not shown reversible error. Unlike an ALJ, the AC is not required to make specific findings of fact when it denies review. It need only "consider the additional evidence" that is new, material, and chronologically relevant. The AC stated that it considered the new evidence that Plaintiff submitted, and it added the evidence to the record. [R1-6]. The Appeals Council was not required to do more. When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not "required to provide a detailed rational for denying review." *Mitchell v. Comm'r, Soc., Sec. Admin.*, 771 F.3d 780, 784 (11ᵗʰ Cir. 2014); *see also Parks ex rel. D.P.*, 783 F.3d at 852, 853 (quoting 20 C.F.R. § 416.1470(b) and distinguishing *Epps* because "the decision in *Epps* arose in a different procedural context, where the Appeals Council affirmed the decision of the administrative law judge."). As a result, the AC's failure to explain its denial of review was not error.

Therefore, the question is whether the additional records before the AC were "new, material, and relate . . . to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision[.]" 20 C.F.R. § 404.970(b). The Commissioner

AO 72A
(Rev.8/8
2)

argues that the new records would not change the outcome of the ALJ's decision because they were consistent with it. [Doc. 17 at 11]. First, the Commissioner notes that the additional records Plaintiff submitted for treatment between 2009 and 2011 predate her alleged onset date and are consistent with the other records, as they show diagnoses of bipolar and histrionic personality disorder, depressed mood, generally normal mental status examinations, and medication for mental disorders. [*Id.* at 12 (citing [R280-82, 299-337])].

Second, the Commissioner points to medical records authored by Elaine Jividon, ARNP, who performed a psychiatric evaluation of Plaintiff in November 2013 and treated her through April 2015. [*Id.* at 9-10]. In the psychiatric evaluation, Plaintiff reported mild depression and less motivation but, on examination, was alert, oriented, cooperative, and with normal speech, affect, thought process, and thought content, but some fidgeting and an anxious and irritable mood. [*Id.* at 9 (citing [R501-04])]. Nurse Jividon recommended that Plaintiff continue with her medications and diagnosed her with bipolar disorder and histrionic personality disorder. [*Id.* (citing [R483-84, 504])]. In May 2014, Plaintiff reported to Nurse Jividon that her mood was not the best, she was trying to find side job, and was socially active. [*Id.* (citing [R512])]. Other than a depressed mood and over-inclusive speech, Plaintiff's mental status examination was

AO 72A
(Rev.8/8
2)

normal and no changes were made to her medication. [*Id.* (citing [R512-14])]. While Plaintiff reported increased agitation and had an anxious mood and restless, rapid speech in July 2014, Nurse Jividon's mental status examination findings were still normal and she prescribed Lexapro. [*Id.* at 9-10 (citing [R522-24])]. Two months later, Plaintiff reported improvement, sleeping well and not experiencing erratic behavior or moos instability with normal mental status examination findings except over-inclusive speech. [*Id.* at 10 (citing [R482-83])]. Her Lexapro dosage was increased. [*Id.* (citing [R483])]. In additional psychiatric evaluations by Nurse Jividon in November 2014 and April 2015, Plaintiff reported that she was doing pretty well, medication was "life-changing," she could deal with situations, her anxiety was much improved, and her mood was better. [*Id.* (citing [R492, 542, 552])]. Mental status examination findings were again normal except for over-inclusive speech and medication continued. [*Id.* (citing [R492-93, 542-43, 552-53])].

The Commissioner notes that the new records showed that Plaintiff had periodic counseling with Dutton, but treatment notes reflected that she was alert, oriented, cooperative, well groomed, had full range affect, was able to identify stressors and prioritize problems, was learning to use coping techniques and, by the end of 2014, was managing stressors well and demonstrating healthy coping skills. [*Id.* at 11 (citing

41

[R459, 461, 463, 465, 467, 469, 471, 473, 475, 477, 479])].  In June 2014, Plaintiff reported unsteady employment with consulting work and seeking stable employment. [*Id.* (citing [R459, 461])].  Moreover, the Commissioner noted, since Perkins is not an acceptable medical source, it was not error for the ALJ to accord her opinion less weight.  [*Id.* at 14].

Plaintiff's reply does not address the Commissioner's characterization of the records newly before the AC or even cite specifically to those records at all in support of her claims.  [*See* Docs. 16, 18].   As a result, Plaintiff has abandoned this claim. *See Jones v. Bank of Am., N.A.*, 564 Fed. Appx. 432, 434 (11th Cir. Apr. 25, 2014) (" '[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.'  *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004).  Also, '[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.'  *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001).").

Even if she had not abandoned the claim, she has not demonstrated reversible error.  Instead of addressing the AC's consideration of the evidence, she contests the ALJ's weighing of the record; a task that, while reviewable by the AC, is not

AO 72A (Rev.8/8 2)

analyzable under 20 C.F.R. § 404.970(b).  Specifically, Plaintiff responds that the ALJ could have given greater weight to Dutton under SSR 06-03p due to the length of treatment, consistency of her opinion with other evidence in the record, and how well she explained that opinion.  [Doc. 18 at 2].  Plaintiff also notes that Dr. Duncan's exam–to which the ALJ accorded significant weight–was conducted before Plaintiff's alleged onset date and, moreover, because it was a one-time exam, is not a longitudinal indicator of her bi-polar condition, which occurs in cycles.  [*Id.*].  Similarly, Plaintiff submits that Dr. Prosser's opinion was not based on all mental evidence.  [*Id.*].

In regards to Dutton's opinion, while SSR 06-03p allows the ALJ to use the 20 C.F.R. § 404.1527(d) factors to evaluate sources who are not acceptable medical sources, it does not mandate that the ALJ do so.  In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."  *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted); *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion a non-medical "other source"); *see also Taylor v. Astrue*, 899 F. Supp. 2d 83, 88 (D. Mass. 2012) (the ALJ had discretion to conclude that plaintiff's "other source" evidence should not be afforded great weight); *Pace v.*

AO 72A
(Rev.8/8
2)

*Colvin*, No. 16-CV-00007-RBJ, 2016 WL 7383404, at *3 (D. Colo. Dec. 21, 2016) (§ 1527(d) factors can be applied to "other source" opinions at ALJ's discretion). *Cf. Harry v. Colvin*, No. 1:15-CV-01514-JFK, 2016 WL 4708009, at *8 (N.D. Ga. Sept. 8, 2016) (noting the best practice is for the ALJ to consider evidence from other sources if probative of severity of impairment and functional limitation).

Here, the ALJ explained that she gave lesser weight to Dutton because her opinion was not supported by the objective evidence in the record. [R31]. Plaintiff offers no citation to any objective medical evidence contained in the record–either before the ALJ or presented to the AC–to contradict the ALJ's findings that Dutton's opinion was not supported by the objective medical evidence. [Docs. 16 and 18 *passim*]. Even if Dutton's treatment records contained objective medical evidence supporting her opinion, because they were never before the ALJ, the ALJ's reasons for discounting her opinion remain valid.

In regard to the opinions rendered by Doctors Duncan and Prosser, while more recent opinions from those with a longitudinal perspective would have been preferable, such records were not before the ALJ, making these consultative opinions the only opinions in the record from acceptable medical sources. Although there is, allegedly, an opinion from Dr. Goral, it was not signed by him but by Ms. Perkins, who is not an

44

acceptable medical source. In fact, the ALJ explained that these "treating opinions . . . are either difficult to authenticate or internally inconsistent." [R32]. Plaintiff has not suggested that the ALJ should have recontacted Dr. Goral or Ms. Perkins to resolve this inconsistency, nor has she pointed to any requirement mandating the same. As a result, the ALJ relied on the only acceptable medical opinions she had; those of the consultative examiners. Accordingly, the Court does not consider this reversible error.

## C.     Whether the ALJ's decision is supported by substantial evidence

Plaintiff argues that the ALJ's decision that she can return to her previous job is not supported by substantial evidence because the hypotheticals posed to the VE "were vague and ambiguous; she did not specify whether Plaintiff could carry out *detailed* instructions; did not specify the *frequency or duration* of the interruptions from her psychological symptoms; nor the *degree of limitations* in relating to coworkers and supervisors." [Doc. 16 at 15 (emphasis original)]. Plaintiff submits that, because the VE identified her past jobs as skilled and "determined that Plaintiff could not perform her past skilled work based upon the moderate limitations Dr. Prosser assesses" she would have difficulty performing skilled work. [*Id.* at 15-16]. Lastly, Plaintiff claims that the ALJ erred by finding Plaintiff could perform her past work as a sales

AO 72A
(Rev.8/8
2)

representative because the ALJ gave significant weight to Dr. Duncan and, when this opinion was posed to the VE, he stated that she could not perform that job as it required advanced sales skills. [*Id.* at 16-17].

The Commissioner responds that summary conclusions from a mental RFC assessment by Dr. Prosser are not a functional capacity assessment and the ALJ properly relied on the section of Dr. Prosser's opinion that deals with the RFC and the reasons for the same. [Doc. 17 at 16-17 (citing R402-03; *Jones v. Comm'r of Soc. Sec.*, 478 Fed. Appx. 610, 612 (11th Cir. Jun. 1, 2012); *Land v. Comm'r of Soc. Sec.*, 494 Fed. Appx. 47, 49 (11th Cir. Oct. 26, 2012); *Maffia v. Astrue*, No. 5:09-cv-184-Oc-GRJ, 2010 WL 3893711, at *6 (M.D. Fla. Sept. 29, 2010))]. Plaintiff replies that Dr. Prosser's opinion was itself vague and ambiguous as it did not specify how many interruptions were excessive or how limited Plaintiff's contact with coworkers and supervisors should be. [Doc. 18 at 3-4]. Additionally, the Commissioner argues that the VE testified–in response to the hypothetical encompassing Dr. Duncan's opinion–that Plaintiff could still perform her past work as a dental hygienist. [Doc. 17 at 17 (citing *Waldrop v. Comm'r of Soc. Sec.*, 379 Fed. Appx 948, 952 (11th Cir. May 21, 2010))].

AO 72A
(Rev.8/8
2)

The ALJ erred in concluding that Plaintiff could perform her past work as a pharmaceutical sales representative. First, the ALJ accorded significant weight to Dr. Duncan's assessment–that Plaintiff had no significant limitations. [R30]. Second, the ALJ used this hypothetical as the basis for a question the VE, who responded that, under this hypothetical, Plaintiff would be unable to perform a job as a sales representative. [R72]. Third, the ALJ ultimately adopted an RFC that imposed greater restrictions than Dr. Duncan's assessment dictated; specifically, the ALJ found Plaintiff could only maintain adequate concentration and attention for two hours periods in an eight-hour workday. [R28, 30]. Lastly, in adopting this RFC, the ALJ opined that Plaintiff could perform her past work as both a dental hygienist and as a sales representative. [R33]. It is axiomatic that adopting an RFC that imposed greater restrictions than Dr. Duncan's assessment–which, according to the VE, precluded Plaintiff from working as a sales representative–leads to the conclusion that Plaintiff cannot perform her past work as a sales representative. The ALJ did not explain how–despite the VE's testimony and the RFC's limitations–she found that Plaintiff could still perform a sales representative job. As a result, this was an error.

AO 72A
(Rev.8/8
2)

However, because the VE testified that Plaintiff could still perform her past work as a dental hygienist, it was harmless error for the ALJ to conclude that she was not disabled and could still perform her past relevant work. [R33].

As regards Plaintiff's contention that Dr. Prosser opined Plaintiff had limitations that would preclude her past relevant work, the VE testified to the contrary. [R71]. Plaintiff offers nothing more than bare assertions that the limitations assessed by Dr. Prosser precluded her past relevant work. [Doc. 16 at 16]. The ALJ's decision is not error simply because Plaintiff interprets the facts differently. Here, because the VE testified that Dr. Prosser's assessed limitations would not preclude Plaintiff's past relevant work, "there is substantially supportive evidence" of the ALJ's decision. *Barron*, 924 F.2d at 230.

As regards Plaintiff's argument that the hypotheticals posed to the VE lacked sufficient detail, an ALJ must pose a hypothetical to the VE that

> " 'comprises all of the claimant's impairments.' " *Ingram*, 496 F.3d at 1270 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). However, the ALJ is not required to include findings in the hypothetical that the ALJ properly rejects. *See Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (findings rejected as unsupported). Moreover, if additional impairments asserted by a claimant are not supported by substantial evidence, they do not need to be included in a hypothetical. *Id.* A hypothetical need not include "each and every symptom" alleged by a claimant. *Ingram*, 496 F.3d at 1270.

48

AO 72A
(Rev.8/8
2)

*Wright v. Comm'r of Soc. Sec.*, 327 Fed. Appx. 135, 136-37 (11th Cir. Apr. 24, 2009).

Plaintiff offers no legal support whatsoever for her contention that the ALJ erred by not including more detailed limitations in the hypotheticals posed to the VE (or using, as a basis for those hypotheticals, a more detailed doctor's opinion). [Doc. 16 at 15-16; Doc. 18 *passim*]. Therefore, the issue is not properly before the Court. *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (finding that the plaintiff waived an issue by failing to elaborate on the argument or provide a citation to authority regarding the argument); *see also Dawkins v. Glover*, 308 Fed. Appx. 394, 395 (11th Cir. Jan. 23, 2009) (a legal claim or argument that has not been briefed is deemed abandoned and that mentioning an issue without providing specific argument in support is not sufficient); *Seay v. United States*, 166 Fed. Appx. 422, 423 (11th Cir. Jan. 26, 2006) (holding that appellant's mere statement that district court improperly dismissed his complaint on *res judicata* grounds without any substantive argument in support amounted to abandonment of his claims even though he argued the merits of his underlying claims). As Plaintiff points to no authority in support of her contention that the ALJ's hypotheticals lacked sufficient detail, the Court concludes that there was no error in the ALJ's hypotheticals or the decision based upon them.

AO 72A
(Rev.8/8
2)

*VIII. CONCLUSION*

As the Court finds no error in the claims asserted by Plaintiff, it **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter judgment for Defendant.

**IT IS SO ORDERED and DIRECTED**, this the 6th day of September, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)